**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **MCOM IP, LLC** | |
| Plaintiff, | **No. 6:21-cv-00480-ADA** |
| **vs.** | |
| | **JURY TRIAL DEMANDED** |
| **FIRST TECH FEDERAL CREDIT UNION** | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE
<u>AND FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

I.   ARGUMENT.................................................................................................... 2

   A.  Motion to Dismiss Under Rule 12(b)(3) for Improper Venue ............................ 2

     1.  Legal Standard.................................................................................... 2

     2.  Venue is improper in this judicial district........................................... 3

   B.  Motion to Dismiss Under Rule 12(b)(6) For Failure to State a Claim ............... 4

     1.  Legal Standard.................................................................................... 4

     2.  mCom has not pleaded sufficient facts to provide notice of its infringement allegations and falsely represents that First Tech offers the "Virtual Wallet Checking Pro" product...... 4

   C.  Motion to Dismiss Under Rule 12(b)(6) Pursuant to 35 U.S.C. § 101 ............... 5

     1.  Legal Standard.................................................................................... 5

     2.  The Law of 35 U.S.C. § 101. .............................................................. 6

     3.  This Case is Unlike *Slyce v. Syte*..................................................... 8

     4.  The '508 Patent .................................................................................. 8

     5.  The '508 Patent is Invalid Under § 101. ............................................. 10

II.  CONCLUSION................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addiction and Detoxification Inst. L.L.C. v. Carpenter*,
   620 Fed. Appx. 934 (Fed. Cir. 2015) ...................................................................4, 5

*Aeritas, LLC v. Sonic Corp.*,
   No. 6:20-cv-00103-ADA (Mar. 13, 2020) ...............................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................................................ *passim*

*Ancora Techs., Inc. v. HTC America, Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) .............................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................4, 6

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) .........................................................................6, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................4

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .............................................................................20

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...................................................................................6, 7, 11

*Bridge and Post, Inc. v. Verizon Communications, Inc.*,
   778 Fed. App'x 882 (Fed. Cir. 2019) ...........................................................8, 13, 14

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ...................................................................2, 12, 19

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) .........................................................................16, 18

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014) .....................................................................11

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018) .............................................................................15

*Cuvillier v. Sullivan*,
    503 F.3d 397 (5th Cir. 2007) ............................................................................6

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)........................................................................7

*Data Engine Techs. LLC v. Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018)........................................................................15

*De La Vega v. Microsoft Corp.*,
    2020 WL 3528411 (W.D. Tex. Feb. 7, 2020) (Albright, J.) ...............................4

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980) .........................................................................................6

*Diamond v. Diehr*,
    450 U.S. 175 (1981) .........................................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..........................................................15, 16, 19

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)......................................................................12

*Finnavations LLC v. Payoneer, Inc.*,
    No. 1:18-cv-00444-RGA, 2019 WL 1236358 (D. Del. Mar. 18, 2019) ...................8

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)........................................................................7

*Hamilton v. United Parcel Serv., Inc.*,
    No. 1:11–CV–240, 2012 WL 760714 (E.D. Tex. Feb. 13, 2012)............................3

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)......................................................................13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)........................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012)...............................................................................7, 11

*mCom IP, LLC v. The PNC Financial Services Group, Inc.*,
    Case No. 6-21-cv-00217-ADA ...........................................................................5

*Parker v. Flook*,
    437 U.S. 584 (1978)....................................................................................7, 16

iii

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ........................14

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017)...................................................................................................15

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)............................................................................................11, 14

*Schnell v. Peter Eckrich & Sons, Inc.*,
365 U.S. 260 (1961)........................................................................................................................2

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514.......................................................................................................................1, 2, 3

*In re TLI Commc'ns LLC Patent Litigation*,
823 F.3d 607 (Fed. Cir. 2016)....................................................................................................17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)..................................................................................................15

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring).......................................................6, 17

*Yanbin Yu, et al. v. Apple Inc. et al*,
Case Nos. 2020-1760, 2020-1803 (Fed. Cir. June 11, 2021)..................................................19

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018)....................................................................................................3

**Statutes**

12 U.S.C. § 1751 ...........................................................................................................................3

28 U.S.C. § 140 6(a) .....................................................................................................................1

28 U.S.C. § 1400(b) ...............................................................................................................1, 2, 3

28 U.S.C. § 1406(a) ......................................................................................................................3

35 U.S.C. § 101......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(3)........................................................................................................1, 2, 3

Fed. R. Civ. P. 12(b)(6)............................................................................................... *passim*

mCom IP, LLC has brought this lawsuit against First Technology Federal Credit Union, dba First Tech Federal Credit Union ("First Tech") in an improper venue, it has falsely accused First Tech of patent infringement for a product not offered by First Tech that belongs to a different company sued by mCom in another lawsuit, and it has asserted a patent that is ineligible for patent protection. Thus, the Court should dismiss the Complaint with prejudice.

First, venue is improper in this judicial district. Venue in patent cases is governed solely by 28 U.S.C. § 1400(b), which establishes that "[a]ny civil action for patent infringement may be brought in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of [alleged] infringement and has a regular and established place of business." *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514.  First Tech does not reside in or have a regular and established place of business in this judicial district. The Court should therefore dismiss mCom's Complaint for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 140 6(a).

Second, a patentee plaintiff is required to put a defendant on notice of what product is accused of infringement. mCom's Complaint does not plausibly allege infringement against First Tech because mCom fails to identify an accused product that is owned or operated by First Tech. Instead, the product mCom accuses of infringement, the "Virtual Wallet Checking Pro", belongs to PNC Financial Services Group, Inc., one of the other over twenty companies sued by mCom in this district. Because mCom has not accused any First Tech products in the Complaint, the Court should dismiss the case with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Third, the asserted claims of U.S. Patent No. 8,862,508 are directed to the abstract idea of providing targeted marketing in a remote banking system and do not claim any inventive concept

1

sufficient to confer patent eligibility on the claimed abstract idea. Abstract ideas like this, when implemented using conventional computer components, are not eligible for patent protection under 35 U.S.C. § 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). This is especially true if the abstract idea is not directed to any improvement in technology and any purported "inventive concept" is limited to improving the abstract idea itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

The asserted patent does no more than withdraw a basic idea (providing targeted marketing in a remote banking system) from the public domain without disclosing any particularized application of that idea. Therefore, the asserted patent is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. Resolving this issue does not require more discovery or claim construction. mCom's factual allegations, even when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources further litigating an invalid patent, First Tech requests the Court dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I.   ARGUMENT

### A.  Motion to Dismiss Under Rule 12(b)(3) for Improper Venue

#### 1.  Legal Standard

Under the Supreme Court's decision in *TC Heartland*, venue in patent cases is governed solely by 28 U.S.C. § 1400(b), which establishes that "[a]ny civil action for patent infringement may be brought in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of [alleged] infringement and has a regular and established place of business." *TC Heartland*, 137 S. Ct. at 1514. "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961).

Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the plaintiff shoulders the "burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). "Whenever an action could not have been properly brought in a district and no reason appears why it would be more in [the] interest of justice for [the] court to transfer [the] case than to dismiss it, it should be dismissed pursuant to 28 U.S.C. § 1406(a)." *Hamilton v. United Parcel Serv., Inc.*, No. 1:11–CV–240, 2012 WL 760714, at *2 (E.D. Tex. Feb. 13, 2012).

## 2. Venue is improper in this judicial district.

mCom has not carried its burden to show that venue is proper in this district. First Tech does not "reside," nor has it ever "resided," in this judicial district under the first prong of § 1400(b) because it is a federally-chartered credit union organized and existing pursuant to the Federal Credit Union Act (12 U.S.C. § 1751 et al.), and its principal place of business is located at 2702 Orchard Parkway San Jose, California 95131. (Decl. of Andrew Graffis at ¶ 3, attached as Ex. A); *see also TC Heartland*, 137 S. Ct. at 1520 ("[R]eside[nce]' in § 1400(b) has a particular meaning as applied to domestic corporations: It refers only to the State of incorporation.") (brackets in original).

In addition, First Tech does not have, nor has it ever had, "a regular and established place of business" in this judicial district under the second prong of § 1400(b). mCom falsely alleges First Tech has "a principal place of business located at 6201 Sanger Ave., Waco, Texas 76710." (Dkt. No. 1 (Compl.) at ¶ 2.) mCom is wrong. (Decl. of Andrew Graffis at ¶ 4.) First Tech has no nor has it ever had a physical presence in the Western District of Texas. (*Id.* at ¶ 5.) First Tech does not own or lease any property, physical or otherwise, in the Western District of Texas. (*Id.* at ¶ 6.)

Venue is thus improper under 28 U.S.C. § 1400(b), and mCom's Complaint against First Tech should be dismissed under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

3

### B.  Motion to Dismiss Under Rule 12(b)(6) For Failure to State a Claim

### 1.  Legal Standard

The sufficiency of any allegations of direct infringement in a complaint are measured by the *Iqbal* and *Twombly* standards. *De La Vega v. Microsoft Corp.*, 2020 WL 3528411, *5 (W.D. Tex. Feb. 7, 2020) (Albright, J.). Under this standard, a plaintiff must provide the grounds of his entitlement to relief, and must allege specific facts in support of each such claim, sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Circuit "precedent requires that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013)). The complaint must provide notice to the defendant as to how it supposedly infringed the asserted patent. *Addiction and Detoxification Inst. L.L.C. v. Carpenter*, 620 Fed. Appx. 934, 937 (Fed. Cir. 2015).

### 2.  mCom has not pleaded sufficient facts to provide notice of its infringement allegations and falsely represents that First Tech offers the "Virtual Wallet Checking Pro" product.

mCom has failed to plead sufficient facts to put First Tech on notice as to how it allegedly infringed the asserted patent claims. The Complaint does not contain allegations showing that any accused products owned or operated by First Tech meets every limitation of any of the asserted claims. Accordingly, the Court should dismiss mCom's claims for patent infringement.

To state a claim for patent infringement, a plaintiff must plead "some allegation of specific services or products of the defendants which are being accused" to "put Defendants on notice as to what activity, method, or procedure is alleged to infringe." *Carpenter*, 620 Fed. Appx. at 937 (emphasis added). mCom's Complaint falls short of this modest hurdle by failing to plead any facts to support the allegation that First Tech directly infringes.

mCom instead offers a bare claim of infringement (*see* Compl. at ¶ 8), followed by a grossly misleading infringement chart reciting Claim 1's limitations and falsely accusing First Tech of offering the "Virtual Wallet Checking Pro" product (*see id.* at ¶ 9). First Tech, however, does not own or operate such a product. (Decl. of Andrew Graffis at ¶ 7.) In fact, "Virtual Wallet Checking Pro" seems to belong to PNC Financial Services Group, Inc. *See mCom IP, LLC v. The PNC Financial Services Group, Inc.*, Case No. 6-21-cv-00217-ADA, at Dkt. No. 1. It appears that mCom either intentionally or blindly and recklessly copied and pasted PNC's infringement chart into First Tech's Complaint. (*See* PNC Compl. at ¶ 9, attached as Ex. B.) mCom even changed the URL used in the PNC chart (https://www.**pnc**.com/en/personal-banking/virtual-wallet-overview/virtual-wallet-checking-pro-overview.html#) to create the false illusion and make it look like a URL belonging to First Tech (https://www.**FirstTech**.com/en/personal-banking/virtual-walletoverview/virtual-wallet-hecking-pro-overview.html#) which does not exist. At best, mCom's conduct represents a gross failure to perform its required due diligence before bringing a lawsuit against First Tech, wasting party and judicial resources litigating frivolous allegations.

Because mCom has not identified any accused products owned or operated by First Tech, the Complaint should be dismissed with prejudice. Fed. R. Civ. P. 12(b)(6).

### C.  Motion to Dismiss Under Rule 12(b)(6) Pursuant to 35 U.S.C. § 101

#### 1.  Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss

a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### 2.   The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract

ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see*

*also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

### 3. This Case is Unlike *Slyce v. Syte*

Defendant First Tech is aware of this Court's opinion in *Slyce v. Syte* and its approach that, in most cases, "delaying the determination of a patent's § 101 eligibility is the wisest course of action." No. 6:19-cv-257-ADA, 2020 WL 278481, at *8 (W.D. Tex. Jan. 10, 2020). This case, however, "is one of the rare cases where it is appropriate to resolve the Section 101 eligibility of the patent[]-in-suit as a Rule 12(b) motion to dismiss." *See, e.g.*, *Aeritas, LLC v. Sonic Corp.*, No. 6:20-cv-00103-ADA (Mar. 13, 2020) (text order denying Defendants' motions to dismiss without prejudice). Indeed, the assertion of a patent directed to a similar abstract idea was sufficient grounds for Judge Andrews of the District of Delaware to find a case exceptional and award attorneys' fees because patents directed to fundamental business practices (and nothing more), like the patent invalidated in *Alice*, are clearly ineligible:

> There is no question that the '755 Patent is patent ineligible under the Federal Circuit's current precedent. In fact, the Patent is reminiscent of patents which courts were invalidating in the immediate wake of *Alice*, five years ago. Since *Alice*, the law of patent eligibility has perhaps become unpredictable and unclear on the fringes. **But one thing has remained true: patents which look like *Alice* are ineligible.**

*Finnavations LLC v. Payoneer, Inc.*, No. 1:18-cv-00444-RGA, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019) (emphasis added). The patent here, which is directed to making providing targeted marketing in a remote banking system, looks like *Alice* and the other patents invalidated by federal courts since *Alice*, including *Bridge and Post, Inc. v. Verizon Communications, Inc.*, 778 Fed. App'x 882, 887 (Fed. Cir. 2019). It is therefore clearly ineligible and presents the kind of ineligibility question that this Court can and should address at the Rule 12 stage.

### 4. The '508 Patent

The '508 Patent "relates generally to the field of electronic banking solutions." ('508 Patent

at 1:16–17.) Specifically, the patent "is directed to a system and method for delivering a retail banking multi-channel solution that unifies interactive electronic banking touch points to provide personalized financial services to customers and a common point of control for financial institutions."(*Id.* at 1:17–23.)

The applicants explained that at the time of the alleged invention, "a majority of customers . . . conduct[ed] business with the electronic delivery systems provided by the[] financial institutions." (*Id.* at 1:27–29.) As the patent explains, "electronic delivery systems [were] well known in the art." (*Id.* at 1:35–36.) These "include[d] automatic teller or transaction machines (ATM), self-service coin counters (SSCC), kiosks and various other online banking services provided via web-enabled interfaces." (*Id.* at 1:29–34.) But as the patent alleges, "these conventional e-banking touch points continue to exist today as stand-alone systems, providing customers and financial institutions alike with relatively few control and presentation options." (*Id.* at 1:53–56.) Thus, the goal of the purported invention was "to provide an innovative system and method utilizing an added-value platform for unifying e-banking touch points and enabling a personalized customer experience." (*Id.* at 2:1–4.)

But the applicants' purported solution for providing a unified interactive electronic banking system consists of nothing more than the use of conventional devices and technologies. (See id. at Fig. 1.) The applicants made this clear through their own language in the specification. For example, the specification makes the following concessions about the use of conventional devices and technologies:

- "e-banking touch points 106 may include an automatic teller/transaction machine (ATM) touch point 106 b, a self-service coin counter (SSCC) touch point 106 a, a plasma signage display (PSD) touch point 106 c, alternate e-banking system touch points (e.g., a kiosk) or **any**

**combination thereof**." (*Id.* at 3:33–41.)

- "Customers of the financial institution may interact with multi-channel server 102 via an Internet network 114 utilizing web-enabled customer devices . . . [such as] a personal digital assistant (PDA) device 116 a, a personal computer (PC) 116 b, a wireless laptop 116 c or **any other suitable web-enabled device or system**." (*Id.* at 4:9–15.)

Accordingly, the alleged invention requires only use of generic devices and technologies used for their conventional purposes.

### 5.  The '508 Patent is Invalid Under § 101.

mCom's Complaint should be dismissed. The claims of the asserted patent are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of providing targeted marketing in a remote banking system. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because mCom has failed to state a claim upon which relief may be granted, First Tech respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

### (a)  Claim 1 of the '508 Patent is representative.

Claim 1 of the '508 Patent is representative of the other claims because the claims contain the same essential elements and are directed to the abstract idea of providing targeted marketing in a remote banking system. The independent claims (claims 1, 7, and 13) recite methods/systems that perform the same essential elements: a multi-channel server connected to multiple remote banking devices, receiving input from the user, retrieving related data, transmitting the data to the remote banking device, storing user's input, monitoring user's session, selecting marketing material based on user's preferences, transmitting the marketing material to the remote device, and

receiving user's response. The differences in phrasing between the independent claims are immaterial to the § 101 analysis because all of the claims are directed to the same abstract concept.

The dependent claims add additional limitations regarding the abstract idea, but these are token pre- or post-solution activity that cannot confer an inventive concept. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *see also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or postsolution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). The differences between these claims and the independent claims are immaterial to the § 101 analysis because each is drawn to the same abstract idea, and each includes elements performed by computing components that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 225. Claim 1 is thus representative of the other claims in the patent. *See PPS Data*, 2019 WL 1317286, at *5.

      (b)    ***Alice* Step 1: Claim 1 of the '508 Patent is directed to the abstract idea of providing targeted marketing in a remote banking system.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of providing targeted marketing in a remote banking system. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

In assessing whether this claim is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In

cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)); *see BSG Tech*, 899 F.3d at 1285–86. The claimed advance of Claim 1 is remotely monitoring a user's online banking activity and providing marketing material to the user:

| Claim Language | Claimed Idea |
| --- | --- |
| 1. A method for constructing a unified electronic banking environment, said method comprising the steps of: | |
| providing at least one common multi-channel server coupled to more than one e-banking touch points and also coupled to at least one computer system configured with at least one control console, said more than one e-banking touch points and said at least one computer system being provided in locations remote from the other, and further wherein said more than one plurality of e-banking touch points are comprised of at least two different types of e-banking touch point devices, each of which comprise one or more of . . . ; | A server connected to multiple remote banking devices |
| receiving an actionable input from at least one e-banking touch point; | Receiving input from the user from one of those banking devices |
| retrieving previously stored data associated with said actionable input, wherein said previously stored data is accessible to any one of said e-banking touch points, and said previously stored data comprises data from one or more financial institutions and one or more user-defined preferences; | Retrieving related data |
| delivering said retrieved data to said at least one e-banking touch point transmitting said actionable input; | Transmitting the data to the remote device |
| storing transactional usage data associated with said at least one e-banking touch point transmitting said actionable input, wherein said stored transactional usage data is accessible by any one of said more than one e-banking touch points and said at least one computer system; | Storing user's input |
| monitoring via said server an active session in real-time for selection of targeted marketing content correlated to said user-defined preferences; | Monitoring user's session |
| subsequent to said monitoring, selecting in real-time said targeted marketing content correlated to said user-defined preferences; and | Selecting marketing material based on |

| Claim Language | Claimed Idea |
|---|---|
| | user's preferences |
| transmitting in real-time said targeted marketing content during said active session to at least one of said e-banking touch points for acceptance, rejection, or no response by a user, wherein said response by said user is used during said active session to determine whether transmission of additional information related to said marketing content occurs during said active session. | Transmitting the marketing material to the remote device and receiving user's response |

As demonstrated above, the claim quickly reduces down to the bare idea of providing targeted marketing in a remote banking system. That is an abstract idea ineligible for patenting.

Claim 1 is not directed to any specific means or method for improving technology—it is directed to the abstract idea of providing targeted marketing in a remote banking system. For decades, a variety of banking services were provided to customers at bank branches. In addition, banks would provide marketing and advertising materials to their customers in the form of brochures and pamphlets. These materials were either provided to all customers, or only to a subset of customers depending on their status or the type of service they required (*i.e.*, targeted marketing). Claim 1 is directed to the same concept, but claims to do so remotely. (*See* '508 Patent at 2:1–4 ("[I]t is desirable to provide an innovative system and method utilizing an added-value platform for unifying e-banking touch points and enabling a personalized customer experience.")). Claim 1 is therefore directed to an abstract idea as it takes an existing human activity and attempts to implement it via conventional technologies. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding the claim at issue "not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity").

Claim 1 is similar to claims in *Bridge and Post* wherein the Federal Circuit found the claims at issue to be "directed to the use of persistent identifiers to implement targeted marketing." 778 Fed. App'x at 887. The court stated that "[t]argeted marketing is a form of 'tailoring information

based on [provided] data,' which we have previously held is an abstract idea." *Id.* (quoting *Capital One Bank (USA)*, 792 F.3d at 1369). The court explained:

> The recited steps of "retrieving a persistent device identifier," "determining" and "retrieving" information associated with the identifier, "analyzing" the information, and "placing directed media" based on that analysis are nothing more than a computer-implementation of targeted marketing over the Internet. The remaining limitations, including "receiving a request . . .," "generating a user profile . . .," and "storing the user profile . . .," are generic computer functions performed in the service of implementing targeted marketing, and do not change the focus of the claim.

(*Id.*) The court further noted that this "concept is a fundamental practice that dates back to newspaper advertisements." *Id.* (quotation omitted).

Claim 1 of the '508 Patent recites only the desired functions for monitoring a user's session, selecting marketing material based on the user's preferences, transmitting the marketing material to the user's remote device, and receiving the user's response, and therefore, it is not meaningfully different from the claims at issue invalidated in *Bridge and Post*. *See also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938, at *18 (E.D. Tex. Mar. 8, 2017), *report and recommendation adopted*, No. 216CV00152JRGRSP, 2017 WL 1177988 (E.D. Tex. Mar. 30, 2017) (The "claims . . . are all directed to the abstract idea of . . . tailoring marketing communications to recipients.") (quotation omitted).

The functional nature of Claim 1's limitations further highlights the extent to which it is abstract. In determining whether a particular claim is directed to an abstract idea, courts focus on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. For example, in *SAP America*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d at 1167. To answer that question, the Federal Circuit directs courts to "look to whether the claims focus on a specific means or method, or are instead

directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). The key question is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for providing targeted marketing in a remote banking system —it requires only a generic mobile device and a generic server to perform their conventional functions. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1355 (Fed. Cir. 2016). Claim 1 does not describe how the desired result is achieved. It merely recites broad computer functions such as receiving, retrieving, transmitting, storing, and selecting data. It does not detail to implement any of these functions. The mechanism to implement the idea is impermissibly unbounded in scope.

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit has addressed the eligibility of claims

directed to improving computer security in *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "[i]mproving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at *4 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '508 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That Claim 1 is limited to targeted marketing in remote banking, specifically, does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker* reinforces the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358; *Parker*, 437 U.S. 584; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Claim 1 is directed to an abstract idea of providing targeted marketing, even if its limitations require practicing that idea in connection with remote banking.

The claimed advance of representative Claim 1 of the '508 Patent is the abstract concept of providing targeted marketing in a remote banking system, an abstract idea, not an invention. Accordingly, the representative Claim 1 fails the first step of the *Alice* analysis.

        (c)     ***Alice* Step 2: The claims of the '508 Patent contains no inventive concept sufficient to transform the abstract idea into patent-eligible matter.**

Because the claims of the asserted patent are directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea.

The claims of the '508 Patent fail *Alice*'s second step because they are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using well-known devices (*i.e.*, a server and ATMs) to perform their conventional functions (*i.e.*, receiving, retrieving, transmitting, storing, and selecting data). As explained above, the abstract functional descriptions in the claims of the '508 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in the asserted claims "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible

application." 838 F.3d 1307, 1316 (Fed. Cir. 2016).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the claims of the '508 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g., buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012).

Each of the steps recited in the claims is described only at a high level of generality. For example, representative Claim 1 of the '508 Patent recites "receiving an actionable input from [an] e-banking touch point"; "retrieving previously stored data associated with said actionable input"; "delivering said retrieved data to [the] e-banking touch point"; "storing transactional usage data associated with [the] e-banking touch point"; "monitoring via said server an active session in real-time for selection of targeted marketing content correlated to said user-defined preferences"; "selecting in real-time said targeted marketing content correlated to said user-defined preferences"; and "transmitting in real-time said targeted marketing content during said active session to [the] e-banking touch points for acceptance, rejection, or no response by a user."

To accomplish these high level functions, the patent recites the need for only off-the-shelf, conventional computer technologies. The specification explains that "e-banking touch points 106 may include an automatic teller/transaction machine (ATM) touch point 106 b, a self-service coin counter (SSCC) touch point 106 a, a plasma signage display (PSD) touch point 106 c, alternate e-banking system touch points (e.g., a kiosk) or **any combination thereof**." ('508 Patent at 3:33–41.) The specification further explains that "[c]ustomers of the financial institution may interact with multi-channel server 102 via an Internet network 114 utilizing web-enabled customer devices . . . [such as] a personal digital assistant (PDA) device 116 a, a personal computer (PC) 116 b, a

wireless laptop 116 c or **any other suitable web-enabled device or system**." (*Id.* at 4:9–15.)

In other words, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. No limitations in the claims of the asserted patent rise to the level of an inventive concept under step two of the *Alice* test. *See, e.g.*, *Yanbin Yu, et al. v. Apple Inc. et al*, Case Nos. 2020-1760, 2020-1803, at 9-10 (Fed. Cir. June 11, 2021) ("[T]he claimed hardware configuration itself is not an advance and does not itself produce the asserted advance of enhancement . . . which . . . is an abstract idea. The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea.") (quotations omitted).

The remaining claims of the '508 Patent (Claims 2–20) include similar limitations regarding the abstract idea and lack the specificity necessary to claim patent-eligible subject matter. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not cover any unconventional computer components or techniques. Accordingly, they suffer from the same flaws as representative Claim 1. All of '508 Patent's claims simply apply the abstract concept of providing targeted marketing in a remote banking system, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290.

       (d)    **There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.**

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d]

parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370. Here, in contrast, there is no factual dispute whether the claims of the '508 Patent include an inventive concept, and mCom has not alleged that any such inventive concept exists.

## II.    CONCLUSION

For the foregoing reasons, First Tech respectfully requests that the Court dismiss mCom's Complaint for improper venue. In addition, First Tech respectfully requests that the Court dismiss mCom's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, First Tech requests dismissal with prejudice.

Dated: October 14, 2021

Respectfully Submitted,

**FISH & RICHARDSON P.C.**

/s/ Neil J. McNabnay
Neil J. McNabnay
Texas Bar No. 24002583
Ricardo J. Bonilla
Texas Bar No. 24082704
Rodeen Talebi
Texas Bar No. 24103958

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone: (214) 747-5070
Facsimile: (214) 747-2091
mcnabnay@fr.com
rbonilla@fr.com
talebi@fr.com

**COUNSEL FOR DEFENDANT**
**FIRST TECHNOLOGY FEDERAL CREDIT**
**UNION**

## **<u>CERTIFICATE OF SERVICE</u>**

WE HEREBY CERTIFY that a true and correct copy has been electronically filed using the CM/ECF filing system on October 14, 2021 which automatically sends email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.

/s/ Neil J. McNabnay      
Neil J. McNabnay
